# 21-2609-cv

## United States Court of Appeals

*for the*

## Second Circuit

ABBEY HOTEL ACQUISITION, LLC, SETAI HOTEL ACQUISITION, LLC,
SETAI RESORT AND RESIDENCE CONDOMINIUM ASSOCIATION, INC.,
SETAI VALET SERVICES, LLC,

*Plaintiffs-Appellants,*

– v. –

NATIONAL SURETY CORPORATION,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

DENNIS T. D'ANTONIO
JOSHUA L. MALLIN
WEG & MYERS, P.C.
*Attorneys for Plaintiffs-Appellants*
800 Westchester Avenue, Suite N-513
Rye Brook, New York 10573
(212) 227-4210

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ...........................................................1

ARGUMENT .....................................................................................3

      POINT ONE

      BY ITS TERMS, THE POLICY'S "COMMUNICABLE
      DISEASE" PROVISION PROVIDES COVERAGE FOR THE
      FINANCIAL LOSSES SUFFERED BY PLAINTIFFS AS A
      RESULT OF COVID 19 AND ITS EFFECTS ...............................................3

      POINT TWO

      PROPERTY INSURANCE JURISPRUDENCE NEVER
      REQUIRED THAT PROPERTY NEEDED TO BE
      PERMANENTLY "PHYSICALLY ALTERED" IN ORDER TO
      QUALIFY AS AN OCCURRENCE RESULTING FROM
      PHYSICAL LOSS OR DAMAGE.................................................13

      POINT THREE

      PLAINTIFFS ADEQUATELY ALLEGED LOSS UNDER THE
      POLICY'S CIVIL AUTHORITY PROVISIONS .......................................18

      POINT FOUR

      UNDER APPLICABLE LAW, THE POLICY'S VIRUS
      EXCLUSION IS UNENFORCEABLE .......................................19

CONCLUSION ...................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................ 2, 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007) ............................................................ 2, 17

*Berkshire Life Ins. Co. v. Adelberg*,
698 So.2d 828 (1997) ....................................................................................4, 8

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ...............................................................................16

*Excevarria v. Dr. Pepper Snapple Grp., Inc.*,
764 F. App'x 108 (2d Cir. 2019) .........................................................................16

*Freling v. Reliance Standard Life Ins. Co.*,
315 F.Supp.2d 1277 (S.D. Fla. 2004)...................................................................5

*Homeowners Choice Prop. & Cas. v. Maspons*,
211 So. 3d 1067 (Fla. App. 3d Dist. 2017) .........................................................14

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*,
489 F. Supp. 3d 1303 (M.D. Fla. 2020) .......................................................... 9, 14

*Internaves de Mexico s.a. de C.V. v. Andromeda Steamship Corp.*,
898 F.3d 1087 (11th Cir. 2018) ..........................................................................10

*Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*,
512 F. Supp. 3d 1323 (S.D. Fla. 2021)....................................................... 9, 10, 14

*Machovec v. Palm Beach County*,
310 So. 3d 941 (4th Dist. Fla. Jan. 27, 2021)........................................................7

*National Surety Co. v. Williams*,
74 Fla. 446, 77 So. 212 (1917) ...........................................................................15

*New York Life Ins. Co. v. Kincaid*,
136 Fla. 120 (1939) ............................................................................................15

*PS Business Management v. Fireman's Fund Ins. Co.*,
No. 21-1229, 2021 WL 4989870 (E.D. La. Oct. 27, 2021) ...................................8

*Purrelli v. State Farm Fire & Cas. Co.*,
  698 So. 2d 618 (Fla. 2d DCA 1997) ..................................................................19

*Silveri v. Northern Insurance Co. of New York*,
  2010 WL 11505223, No. 09-CIV-61753 (S.D. Fla. July 12, 2010) .....................6

*State Farm Fire & Cas. Co. v. CTC Development Corp.*,
  720 So. 2d 1072 (1998) ........................................................................................5

*Sweet v. Sheahan*,
  235 F.3d 80 (2d Cir.2000) ..................................................................................16

*Tarshis v. Riese Org.*,
  211 F.3d 30 (2d Cir. 2000) .................................................................................17

*Tire Kingdom, Inc. v. First S. Ins. Co.*,
  573 So. 2d 885 (Fla. 3d DCA 1990) ...................................................................20

*Trinidad v. Florida Peninsula Ins. Co.*,
  121 So. 3d 433 (2013) ........................................................................................13

*Zucker For BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*,
  856 F.3d 1343 (11th Cir. 2017) ..........................................................................20

## Statutes & Other Authorities:

Fed. R. Civ. Pr. 12(b)(6) .........................................................................................1

Miami-Dade County Charter § 2.02 .........................................................................7

## PRELIMINARY STATEMENT

Plaintiffs-Appellants Abbey Hotel Acquisition, LLC, Setai Hotel Acquisition, LLC, Setai Resort and Residence Condominium Association Inc. and Setai Valet Services, LLC (hereinafter collectively "Plaintiffs") submit this memorandum of law in further support of their appeal of the Order of the District Court dated October 1, 2021, which granted the motion of Defendant-Appellee National Surety Corporation ("National Surety" or "Defendant") to dismiss Plaintiffs' Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(6).[1]

As opposed to a myriad of other policies this Court, and other courts in New York has examined, it must initially be noted that the policy at issue, for which Plaintiffs dutifully paid premiums, provided coverage, *inter alia*, for those occasions when the insured experiences a "slowdown" of business in order to "mitigate" the effects of a "communicable disease." *See* R. at A-141, A-175, A-185. Moreover, "communicable disease" is a term defined by this Policy to include viruses that are transmissible among humans at the insured premises. Thus, despite Defendant's attempt to conflate this coverage with other coverages that require the suffering of permanent loss or alteration, the "communicable disease" coverage requires no such trigger for coverage to be implicated. Defendant's attempts at linguistic gymnastics

---

[1] Except as explicitly indicated to the contrary herein, all capitalized terms take the meaning ascribed to them in Plaintiffs-Appellants' Initial Brief ("Initial Brief" or "Br.").

1

do not change this fact, nor do its efforts to cite every case under the sun involving either a policy of insurance that does not contain coverage specifically for communicable disease or a policy that contains an enforceable virus exclusion. Consequently, Defendant's attempt to overwhelm this Court with citations to other Covid 19 first party coverage decisions rings hollow and should not distract this Court from the examination of the terms and conditions offered by this Defendant to this set of Plaintiffs.

Similarly, as to Plaintiff's pleading in general, the Supreme Court's decisions in *Twombly* and *Iqbal* require this Court to accept all well-pleaded factual allegations as true. Defendant claims that "common sense" is a valid substitute. It is ancient learning from the time of the Romans, reiterated through the ages by such luminaries as Voltaire and Mark Twain, that common sense is generally rare. Plaintiffs in this matter alleged through specific scientific references that the presence of a virus constitutes a form of physical damage, and from an abundance of caution included with their opposition to the motion being appealed here affidavits from the experts upon whom they relied in drafting their Complaint to establish same. Absent conclusive documentary proof to the contrary, these are allegations that the Court must accept, and which it was error for the District Court to ignore. Consequently, the District Court's Order should be reversed and Plaintiffs' Complaint reinstated.

**ARGUMENT**

**POINT ONE**

**BY ITS TERMS, THE POLICY'S "COMMUNICABLE DISEASE"
PROVISION PROVIDES COVERAGE FOR THE
FINANCIAL LOSSES SUFFERED BY PLAINTIFFS
AS A RESULT OF COVID 19 AND ITS EFFECTS**

The Subject Policy unambiguously and in no uncertain terms provides coverage when an insured is forced to "suspend" its business operations as a result of the presence of a communicable disease at the insured premises. *See* R. at A-141. The term "suspend" is defined in the policy to include a mere "slowdown" as well as the more obvious "cessation" of business. *See* R. at A-185. Any reasonable insured reading that provision in conjunction with the communicable disease coverage would therefore understand that a total shutdown need not occur for its losses to be covered.

The "Communicable Disease" Coverage extension explicitly provides as follows:

> 1. Communicable Disease Coverage
> a. (1) We will pay for direct physical loss or damage to Property Insured caused by or resulting from a covered communicable disease event at a location including the following necessary costs incurred to:
>
> . . .
>
> (c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects the communicable disease.

3

> 2. If the Declarations show a Limit of Insurance for Business Income and Extra Expense Coverage, then we will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of operations during the period of restoration. The suspension must be due to direct physical loss or damage to property at a location caused by or resulting from a covered communicable disease event.

*See* R. at A-141. Both "communicable disease" and "communicable disease event" are defined terms under the policy. "Communicable disease" means "any disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human." *See* R. at A-175. "Communicable disease event," in turn, means "an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location." *See id.*

In its opposition to this appeal, Defendant engages in a frankly tortured breakdown of the various words in this coverage in attempt to escape the plain meaning of the language that it used. As the Florida Supreme Court has stated, however, as a matter of law, the insured is "entitled to a clear explanation of terms rather than a fine distinction which was never written into his contract for insurance coverage." *See Berkshire Life Ins. Co. v. Adelberg*, 698 So.2d 828, 830 (1997). Moreover, "when an insurer fails to define a term in a policy, ... the insurer cannot take the position that there should be a narrow, restrictive interpretation of the

4

coverage provided." *State Farm Fire & Cas. Co. v. CTC Development Corp.*, 720 So.2d 1072 (1998) (internal quotations omitted).

Defendant first claims that the Executive Order that functionally shut down both Plaintiffs' hotel, restaurants, bars and other related operations did not amount to an "evacuation" order and that functional evacuation does not trigger coverage under the "communicable disease" provisions of the policy. Under Defendant's interpretation, only a governmental order that specifically told Plaintiffs to "evacuate," using that word, would qualify for coverage. However, the policy language does not support such a hyper technical requirement. *Cf. Freling v. Reliance Standard Life Ins. Co.*, 315 F.Supp.2d 1277, 1288-89 (S.D. Fla. 2004) (granting summary judgment in favor of insured who was partially incapable of performing his occupation was totally disabled within the meaning of a policy where the policy failed to define "occupation" as the inability to perform all, rather than merely some, of the insured's occupational duties). The language merely states that a "public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location," and does not require that the Order specifically state that Plaintiffs must be directed to evacuate the insured location completely or totally for the loss to be covered. Accordingly, it defies insurance coverage jurisprudence for Defendant to ask this Court to re-write the policy in question so as to allow Defendant to escape liability

based upon the language that the carrier chose to employ when it marketed and sold this policy to Plaintiffs. *See Silveri v. Northern Insurance Co. of New York*, 2010 WL 11505223, No. 09-CIV-61753 (S.D.Fla. Jul. 12, 2010) (refusing to re-write insurance policy on insurer's behalf and further observing in response to Defendant's attempt to rely on Court interpretations of other policies that "[r]epetitive characterization is not legal argument and not a short-cut around reading the actual words in a contract.").

Despite the fact that the foregoing was the only basis on which the District Court granted Defendant's motion with regard to the communicable disease provisions, and perhaps aware of the problems inherent therein, Defendant asserts multiple additional bases on which this Court could choose to correct but affirm the District Court's decision. *Compare* SPA-5-6 *with* Defendant's Brief.

Defendant next takes issue with the fact that the Orders cited by Plaintiffs in their Complaint – which it was noted therein were among several such orders - were issued by the Mayor of Miami-Dade County, who is the leader of the counties in which Plaintiffs' property is located. Defendant claims that the Mayor does not qualify as a "public health official," contending that the policy "obviously requires an order from the public *health* department, not the elected officials in charge of the county." *See* Def. Brief at 35-36. This is not so obvious as Defendant would have it – indeed, Defendant's interpretation is at odds with the express language of the

6

policy. The policy defines "public health official" as a "governmental authority having jurisdiction over your operations relative to health and hygiene standards necessary for the protection of the public." *See* R. at 183. The Mayor of Miami Dade, who is indisputably (a) a governmental authority who (b) has jurisdiction over Plaintiffs' operations, which are located in the territories that the Mayor governs, and whose jurisdiction (c) relates to health and hygiene standards necessary for the protection of the public, qualifies as such. *See* Miami-Dade County Charter §2.02; *see also* Initial Br. at 16-17 *citing Machovec v. Palm Beach County*, 310 So.3d 941 (4th Dist. Fla. Jan. 27, 2021) (affirming county executive's authority to issue orders mandating that citizens wear face masks in public in light of the coronavirus). While it is clear that Defendant wishes it had written "public health department," Defendant did not in fact do so.

Defendant also seeks to avoid providing coverage under the enhanced coverage provisions that it sold to Plaintiffs by claiming that there was no "communicable disease event" because Plaintiffs' insured locations were not specifically identified in the Mayor's orders. In so arguing, Defendant contends that the policy language reference that the official "ordered the location to be evacuated, decontaminated, or disinfected," *see* A-141, should be read as requiring a particular location to be named. Such an argument exemplifies the overly tortured manner in which Defendant seeks to interpret its own policy in order to avoid coverage. The

basis for this coverage is to provide protection where a "communicable disease" is detected and an Order is issued which has the effect of shutting down businesses as a result of the Order. The fact that the Order is drafted in such a manner, to which Plaintiff has no control, to apply to more than a single location, would not be a basis in and of itself to deny coverage. *See Berkshire Life Ins. Co. v. Adelberg*, 698 So.2d 828, 830 (1997) (holding as a matter of law that the insured is "entitled to a clear explanation of terms rather than a fine distinction which was never written into his contract for insurance coverage").

Of the limited number of cases that do squarely address the question of communicable disease coverage, one turned on the plaintiff's failure to allege that a government health organization required it evacuate – a contention that Plaintiffs have made in this case. *Compare PS Business Management v. Fireman's Fund Ins. Co.*, No. 21-1229, 2021 WL 4989870, at * 3 (E.D. La. Oct. 27, 2021) (noting that plaintiffs therein "submit no claims suggesting that they were ordered to evacuate, decontaminate, or disinfect their property") *with* Initial Br. at 8-9 (summarizing allegations of complaint), 15-16 (discussing same). Indeed, a close reading of the text of that case makes clear that if Plaintiffs had included such allegations, the outcome may have been different. *See id.* ("Covid-19 is undoubtedly a communicable disease within the meaning of the policy . . . ."). That Defendant's parent company successfully bated the District Court in this case and one other

district to which it cites into improperly making a factual determination that was unwarranted at the pleading stage is no excuse for this Court to engage in similar conduct. *Cf. Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, 512 F. Supp. 3d 1323, 1326 (S.D. Fla. 2021) (dismissing communicable disease coverage without analysis of same). This is further evidenced by the fact that at least one carrier, issuing similar coverage, did not even have the gall to suggest that the physical alteration of the premises was required before the limited "communicable disease" coverage could be triggered. *Cf. Carilion Clinic v. American Guarantee & Liability Insurance Co.*, No. 21-cv-0168 (W.D.Va. Feb. 4, 2022) (observing that Defendant did not argue the issue of physical loss or damage where policy contained coverage for, *inter alia*, communicable diseases). As of the date of this filing, *PS Business Management* remains currently pending appellate review to address this failure to follow appropriate legal standards.

The policy at issue in *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, 489 F. Supp. 3d 1303, 1307 (M.D. Fla. 2020), unlike the policy at issue here, did not include coverage for communicable disease, leaving its meaning open to the interpretation that a permanent alteration of property was required to find physical loss or damage. *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, 489 F. Supp. 3d 1303, 1307 (M.D. Fla. 2020). Although *Island Hotel Props.* involved a policy with communicable disease coverage, the Court's analysis

9

does not discuss the communicable disease coverage or its impact on the meaning of the terms of the policy at all, whether through failure by the plaintiff to argue the issue or failure of the Court to engage with such argument. *Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, 512 F. Supp. 3d 1323, 1326 (S.D. Fla. 2021). Neither Court provides a reasoned basis upon which to interpret the policy of insurance at issue in this case in the manner Defendant would prefer.

On its face, the policy contemplates the presence of a virus that causes disease capable of transmission from human to human as a form of physical loss or damage. *See* R-141, R-183. The Court below appeared to recognize this, as it wrote separately to address communicable disease coverage and denied coverage with regard to that provision only insofar as the Court (erroneously) concluded that Plaintiffs had not been required to evacuate the insured location. *See* SPA-4-6. However, under Florida law, where the same language appears in more than one clause, it is presumed to take the same meaning throughout the policy absent an indication to the contrary. *See Internaves de Mexico s.a. de C.V. v. Andromeda Steamship Corp.*, 898 F.3d 1087 (11th Cir. 2018) (holding that "a [contract] should be read to give effect to all its provisions and to render them consistent with each other.") (quotation omitted). There is no contrary indication in the policy at issue here. As such, the Defendant has agreed that communicable disease like the

10

coronavirus causes physical loss or damage within the meaning of the policy, and is bound by its agreement.

Given the above, perhaps it is not surprising that despite multiple opportunities, Defendant has repeatedly failed to articulate any way in which there could be an insured loss under the Subject Policy for the communicable disease coverage that Plaintiffs paid for if Defendant's definition as to what constitutes "direct physical loss or damage" in connection with communicable disease is adopted. Defendant's proposed reading of the text thus fails for the additional reason that it would render coverage illusory in violation of public policy and thereby the law of the state of Florida. As such, the decision below must be reversed.

In connection with this particular coverage grant, wherein coverage is provided in order to i.e. "mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects the communicable disease", as well as the business interruption losses relating thereto, the permanent "physical alteration", seemingly required by other courts to trigger the generic coverage provided by a typical property policy, has no application in connection with the Policy at bar when coverage is triggered by "any disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human." Thus given the current Covid-19 jurisprudence, to which Plaintiffs still take exception, wherein claims are dismissed based upon a conclusion

that Covid 19 results in "person to person" injury and not person to property, together with the multitude of dismissals based upon the presence of a "virus exclusion", it is incumbent upon courts to validate specific limited coverages provided to various insureds which directly protect an insured against losses from the economic consequences resulting from Covid-19 and its effects. Furthermore, any such interpretation of the Policy to the contrary would render this coverage illusory in violation of public policy and thereby the law of the state of Florida. As such, a reversal of the District Court's decision is warranted.

Finally, Defendant contends, as though it were fact, that Plaintiffs have not alleged any costs covered by the "communicable disease" provisions of the policy, notwithstanding that Defendant admits the coverage includes business income, which Defendant admits was alleged in the Complaint. *See* Opp. at 37. To the contrary, Plaintiffs alleged that they suffered a loss of income, as well as other losses. *See* R. at A-24, ¶ 47. More to the point, the policy expressly covers costs to "Mitigate, contain, remediate . . . the effects [of] the communicable disease." *See* R. at A-141, F(1)(a)(1)(c). Defendant does not contend – nor could it seriously be stated – that the reason for Plaintiffs' suspension of its business was anything other than to mitigate and contain the effects of a communicable disease. Thus the District Court's conclusion was clearly in error when it concluded that the "communicable disease" coverage—which is clearly written to address losses as a result of Covid

19--cannot aide Plaintiffs in connection with the financial losses that it suffered as a result of the effect of Covid 19.

## POINT TWO

## PROPERTY INSURANCE JURISPRUDENCE NEVER REQUIRED THAT PROPERTY NEEDED TO BE PERMANENTLY "PHYSICALLY ALTERED" IN ORDER TO QUALIFY AS AN OCCURRENCE RESULTING FROM PHYSICAL LOSS OR DAMAGE

Defendant asserts that the Subject Policy requires "'actual' or 'tangible' physical alteration or that property become "physically lost.'" *See* Opp. at 11. Notably, not one of those terms appears in the policy that is at issue in this litigation. These are the Defendant's self-interested spin on what the phase "direct physical loss or damage to property" should mean. If Defendant wished to insure only instances of actual or tangible physical alteration or to require that property become physically lost before coverage kicked in, it was incumbent upon the Defendant as the drafter of the contract to include such terms. In the absence of such language, this Court lacks power to insert those terms. *See Trinidad v. Florida Peninsula Ins. Co.*, 121 So.3d 433, 441-42 (2013) (concluding that insurer could not insert requirement that insured actually replace structure to obtain replacement cost where insurance policy required payment of replacement cost without qualification).

While Defendant claims that Florida law requires "actual, concrete physical alteration" to property at an insured location, it supports this claim with a single citation to a Florida state court decision wherein the language that it quotes is pure

13

dicta. *See* Defendant's Brief at 12-13, *citing Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. App.3d. Dist. 2017) (deciding that ordinary wear and tear exclusion precluded coverage for deteriorating pipe). Defendant further references a series of cases in which the Federal courts in Florida have predicted how the Florida Supreme Court would rule on this issue. *See* Defendant's Brief at 12-13, *citing Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, 489 F. Supp. 3d 1303, 1307 (M.D. Fla. 2020); *Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, 512 F. Supp. 3d 1323, 1326 (S.D. Fla. 2021).

In support of its construction of the Subject Policy as it relates to a necessary physical loss or damage to trigger the generic property coverages (as opposed to the "Communicable Disease" coverage which requires no such "physical loss or damage"), Defendant cites to the "repair" provisions as it relates to the valuation of a loss to bolster its interpretation of the Policy. In so arguing, Defendant pretends that if there is not a broken part or piece, then there is no period of restoration and therefore no coverage, as a matter of law. However, Defendant's definition of "repair" is only one of several definitions of the word "repair." According to Merriam-Webster's dictionary, the word "repair" means, *inter alia*, "to restore to a sound or healthy state; to make good; to compensate for." *See* "Repair," Merriam-Webster Dictionary, *available at https://www.merriam-webster.com/dictionary/repair*. The fact that Plaintiffs had no control over when

14

their property would be restored to a healthy state does not render this provision meaningless. The provision would still apply if, for instance, the condition had been wholly remediated through the development of a cure for the coronavirus such that the disease was no longer present at the insured location but the insured nevertheless chose to continue to close its doors to guests. With hindsight, while plaintiffs did not choose to close their doors here but had them closed for them, that fact does not alter the analysis as to the reasonable basis upon which a "period of restoration" can be understood. Thus, this reasonable interpretation favoring coverage reflects, at best, an ambiguity in the policy which would favor the insured, as a matter of Florida law. *See New York Life Ins. Co. v. Kincaid*, 136 Fla. 120 (1939) *citing National Surety Co. v. Williams*, 74 Fla. 446, 77 So. 212 (1917) ("It is a well-recognized rule of construction and interpretation of contracts for insurance that the contract or policy must be liberally construed in favor of the insured so as not to defeat, without plain necessity, his claim to the indemnity which, in making the contract of insurance, it was his purpose and intention to obtain.")

Defendant's "repair" criteria in order to trigger coverage would also potentially render the policy's Civil Authority coverage illusory as well, as it is beyond reasonable dispute that in the ordinary course, when a building is closed as a result of a civil authority order resulting from damage in the vicinity of, but not at, the insured location, the insured lacks power or authority to conduct any repair.

Moreover, and as noted above, this Court cannot add words to or alter the text of the policy on Defendant's behalf. To require that the Plaintiffs make physical repairs in all instances would add multiple requirements (that Plaintiff make the repairs and that the repairs be physical in nature) that do not appear in the plain text of the policy. The policy also expressly recognizes that the condition should be repaired "with reasonable speed." *See* A-585. What is reasonable in a global pandemic involving a previously unknown virus? The question belongs to a jury, not a court on a pre-answer motion to dismiss.

Defendant, perhaps aware that it cannot hope to succeed under the applicable standards, relies on a Summary Order that is explicitly non-precedential in support of its claims that judges can substitute and rely on "common sense" rather than the well-pleaded allegations of a complaint on a motion to dismiss. *See* Opp. at 8-9 *citing Excevarria v. Dr. Pepper Snapple Grp., Inc.*, 764 F. App'x 108, 109 (2d Cir. 2019) (relying on cases that established, in a deceptive advertising context, that studies relied on by plaintiff as purportedly showing a causal connection between aspartame and weight gain in fact expressly disclaimed any causal relation between the two and therefore dismissing case). In contrast, as this Court's binding precedent establishes, "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2nd Cir. 2002), *citing Sweet v.*

*Sheahan*, 235 F.3d 80, 83 (2d Cir.2000); *see also Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir. 2000).

Defendant claims that "[c]ommon sense and judicial experience, which are the touchstones of the *Twombly/Iqbal* analysis, show that COVID-19 does not cause physical loss or damage to property." *See* Defendant's Brief at 7; *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). To the contrary, *Twombly* and *Iqbal* both require the Court to accept as true all well-pleaded allegations, notwithstanding whatever any individual judge may personally think is the truth of the matter. Indeed, that was the point of both Twombly and Iqbal – that while there does come a time when a Court may engage in fact finding, that moment is not at the time of pleading. That certain judges have engaged in improper fact finding on motions to dismiss in the COVID-19 context does not alter the fundamental analysis, but rather points out a flaw in certain existing decisions. For the avoidance of doubt, Plaintiffs have no qualms with many of the "hundreds" of decisions cited by Defendant involving cases where the plaintiff either (a) did not allege physical loss or damage to their property but only loss of use or (b) had a policy that contained a clear virus exclusion with no conflicting communicable disease coverage grant and therefore were subject to dismissal on that basis. The question in this matter is whether it is plausible to assert that a physical loss occurs when a virus is present in an insured location. Plaintiffs

17

included allegations to this effect and from an abundance of caution have provided sworn affidavits from the experts upon whom they relied when drafting the Complaint in support of this position. Absent any evidence to the contrary, of which Defendant provided none, Plaintiffs' claims meet the threshold requirement. Appeals to "common sense" and "judicial experience" are not a substitute for actual facts, which are unascertained at this stage of the proceedings, nor do they defeat well-pleaded allegations. To conclude otherwise would be to deviate from the well-established standard of pleading.

## POINT THREE

### PLAINTIFFS ADEQUATELY ALLEGED LOSS UNDER THE POLICY'S CIVIL AUTHORITY PROVISIONS

In opposition, Defendant asserts both that Plaintiff somehow abandoned its appeal of the District Court's decision with regard to civil authority coverage and that the argument with regard to civil authority is adequately addressed by the discussion on physical loss or damage. *See* Opp. at 48-49. This argument ignores the fact that the District Court made no distinction between civil authority coverage and other theories of coverage, with the exception of communicable disease coverage, and therefore was based entirely on its position that the presence of COVID-19 could never involve physical loss or damage for the purposes of an insurance policy. For the avoidance of doubt, and as clearly shown by Defendant's own assertion that the discussion regarding physical loss or damage applies with

18

equal force to the civil authority coverages of the policy, Plaintiffs have appealed all portions of the District Court's decision in disputing the District Court's decision vis-à-vis physical loss or damage. Indeed, the Complaint itself contains only a single cause of action for breach of contract. *See* A-27.

Further, Defendant's own argument reveals its flaw when Defendant notes that "the government orders did not 'prohibit access' entirely," thereby conceding that the government orders in fact prohibit access at least partially. *See* Opp. at 49. The policy has no requirement that a government order "entirely" prohibit access, and this Court, as discussed above, cannot rewrite the policy to insert the phrase entirely or completely into the policy simply because Defendant would prefer not to pay Plaintiffs for their losses.

## POINT FOUR

## UNDER APPLICABLE LAW,
## THE POLICY'S VIRUS EXCLUSION IS UNENFORCEABLE

To the extent that Defendant attempts to rely on the policy's inclusion of a virus exclusion as a basis for denial of coverage, as noted in Plaintiffs' Initial Brief, the law is clear that where a policy includes both an explicit coverage grant and an exclusion for the same cause of loss, courts are required as a matter of law to interpret the policy to cover that cause of loss. *See Purrelli v. State Farm Fire & Cas. Co.*, 698 So.2d 618, 620 (Fla. 2d DCA 1997) ("When limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes

19

illusory."); *Tire Kingdom, Inc. v. First S. Ins. Co.*, 573 So.2d 885, 887 (Fla. 3d DCA 1990) ("An insurance policy cannot grant rights in one paragraph and then retract the very same right in another paragraph called an 'exclusion."); *see also Zucker For BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.,* 856 F.3d 1343, 1352 (11th Cir. 2017). Defendant does not dispute and therefore concedes this principle of law. Defendant also admits that the policy contains a provision that explicitly grants coverage for losses resulting from the presence of a communicable disease, which is defined by the policy to include "virus"-related losses. Consequently, under applicable law, the provision is unenforceable and should be treated as a nullity by this Court. Defendant's discussion of the virus exclusion is therefore yet another attempt to mislead this Court.

## <u>CONCLUSION</u>

Wherefore, Plaintiffs-Appellants respectfully request that this Court reverse the decision of the Court below, reinstate Plaintiffs-Appellants' Complaint in all respects, and remand this matter for further proceedings, and for such other and further relief as this Court may deem just or proper.

Dated:      February 9, 2022
           Rye Brook, New York

> **WEG AND MYERS, P.C.**
> *Attorneys for Plaintiffs-Appellants*
> ABBEY HOTEL ACQUISITION, LLC,
> SETAI HOTEL ACQUISITION, LLC,
> SETAI RESORT AND RESIDENCE
> CONDOMINIUM ASSOCIATION, INC.,
> SETAI VALET SERVICES, LLC

> By:    /s/ Dennis T. D'Antonio
>          Dennis T. D'Antonio, Esq.
>          Joshua L. Mallin, Esq.
>   800 Westchester Ave., Suite N-513
>   Rye Brook, New York 10573
>   (212) 227-4210

21

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 4,849 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: New York, New York
      February 9, 2022

                        **WEG AND MYERS, P.C.**
                        *Attorneys for Plaintiffs-Appellants*
                        ABBEY HOTEL ACQUISITION, LLC, SETAI HOTEL ACQUISITION, LLC, SETAI RESORT AND RESIDENCE CONDOMINIUM ASSOCIATION, INC., SETAI VALET SERVICES, LLC

                By:   /s/ Dennis T. D'Antonio
                        Dennis T. D'Antonio, Esq.
                        Joshua L. Mallin, Esq.
                    800 Westchester Ave., Suite N-513
                    Rye Brook, New York 10573
                    (212) 227-4210